IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

TERI GRAY,

    Plaintiff,

v.                                                    Civil Action No 4:16cv00133
                                                    In Admiralty

UNITED STATES OF AMERICA,

    Defendant.
and

UNITED STATES OF AMERICA,

    Third-Party Plaintiff,

v.

PACIFIC ARCHITECTS AND ENGINEERS,
LLC, a Delaware LLC,

    Third-Party Defendant.

**PACIFIC ARCHITECTS AND ENGINEERS, LLC'S
BRIEF IN OPPOSITION TO THIRD-PARTY PLAINTIFF'S
CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

COMES NOW the Third-Party Defendant, Pacific Architects and Engineers, LLC ("PAE"), by counsel and as its Brief in Opposition to the Cross-Motion for Partial Summary Judgment submitted by the United States of America ("USA"), states as follows:

## INTRODUCTION

USA has failed to meet its burden to show that it is entitled to judgment as a matter of law. Despite USA's claims, there is no evidence in the record to support the two-prong *Chandris* test necessary to establish that Plaintiff Teri Gray ("Gray") is a seaman. Without such evidence, denial of USA's Cross Motion for Partial Summary Judgment is appropriate.

1

## FACTS

PAE responds to USA's factual allegations as numbered in USA's brief supporting the Cross-Motion for Partial Summary Judgment as follows:

1. PAE does not dispute the allegations in USA's Paragraph No. 1.

2. PAE disputes the allegation in USA's Paragraph No. 2 that PAE was "hired to train Navy personnel in … *maintaining* Navy amphibious operations vessels," and the evidence cited by USA does not support the allegation.

3. PAE does not dispute the allegations in USA's Paragraph No. 3.

4. PAE does not dispute the allegations in USA's Paragraph No. 4.

5. PAE does not dispute the allegations in USA's Paragraph No. 5.

6. PAE disputes the allegation in USA's Paragraph No. 6 that Gray was more commonly known as "an instructor for Navy students," instead of her designated job title of Engineering Technician IV, and the evidence cited by USA does not support the allegation. Instead, the evidence cited by USA stands for two simple points: First, "[I]n 2014, the part of the company that [Gray was] working with," among other things, trained Navy personnel in driving crafts and doing amphibious operations. Critically, USA offers no evidence of Gray's specific job duties within the larger context of the company's work in 2014. Second, at some point during her employment with PAE, Gray "transitioned from the CAD drawer to an instructor role" when she was given an opportunity to fill the position of Engineering Technician IV. Neither of these facts are relevant to an inquiry whether Gray had an employment-related connection to a vessel in navigation that was substantial in terms of both its duration and its nature.

7. Although PAE does not dispute that some of its instructors "taught Navy students a variety of classes related to amphibious operations," PAE disputes that Gray taught all the

courses listed in USA's Paragraph No. 7. Indeed, the evidence cited by USA simply supports the fact that PAE, as a company, taught the courses listed in Paragraph No. 7, and that some of its instructors, such as Messrs. Work and Torres, may have been qualified to teach the classes identified. However, the duties and employment histories of other PAE employees are not relevant to the issue of whether Gray had the requisite employment-related connection to a vessel in navigation necessary to confer seaman status. Furthermore, as noted in PAE's response to USA's Paragraph No. 2, the evidence cited by USA does not support the allegation that PAE instructors "taught Navy personnel how to *maintain* amphibious operations vessels, including the INLS warping tugs." Although PAE instructors, themselves, may have performed maintenance on some vessels pursuant to the contract between USA and PAE, there is no evidence that the contract required PAE employees to teach Navy students how to maintain the vessels.

8. PAE does not dispute the allegations in USA's Paragraph No. 8.

9. PAE does not dispute the allegations in USA's Paragraph No. 9.

10. PAE does not dispute the allegations in USA's Paragraph No. 10.

11. PAE does not dispute the allegations in USA's Paragraph No. 11.

12. PAE disputes the allegation in USA's Paragraph No. 12 that "Per the Contract PAE was to provide instructors to teach Navy sailors how to maintain" vessels. The evidence cited by USA does not support the allegation. Rather, the Contract required PAE to provide qualified personnel to maintain the vessels. The Contract does not require PAE personnel to teach maintenance for Navy students.

13. PAE does not dispute the allegations in USA's Paragraph No. 13.

14. PAE does not dispute the allegations in USA's Paragraph No. 14 that starting in 2001, some of Gray's duties included those of an instructor. However, the evidence cited by USA

shows that her job title was that of Engineering Technician IV, which also included numerous shoreside duties aside from those as an instructor.

15. PAE does not dispute the allegations in USA's Paragraph No. 15.

16. PAE disputes the allegations in USA's Paragraph No. 16 that "PAE required" Gray to have training and licensure by the Coast Guard. Rather, as alleged in USA's Paragraph No. 12, it was USA that required such training and licensure under the Contract.

17. PAE disputes the allegations in USA's Paragraph No. 17 that "Gray taught Navy sailors how to … maintain vessels," and the evidence cited by USA does not support the allegation.

18. PAE disputes the allegation in USA's Paragraph 18 that "Gray spent most of her time as an instructor on the warping tugs," and the evidence cited by USA does not support the allegation. Rather, the evidence relied upon by USA simply shows that on those occasions during a quarter-century of employment with PAE when Gray performed instruction aboard Navy vessels, it was mostly done aboard warping tugs. The evidence cited by USA fails to distinguish between Gray's time as an instructor aboard warping tugs underway and her time as an instructor aboard warping tugs secured to the pier. Most importantly, the testimony cited by USA wholly fails to quantify Gray's time underway aboard Navy vessels, as compared to her overall employment with PAE as an Engineering Technician IV, including her office duties as technical librarian, lesson planner, computer operator, phone receptionist, fire marshal, etc. Indeed, USA ended its citation of Gray's testimony at page 42, line 21 of her deposition, and it is obvious why after reading the testimony further. As Gray readily acknowledged when she was asked to quantify the amount of time she worked aboard warping tugs, "I can't answer that—it's hard to—it's different. Every course was different. What crafts we were assigned to were different crafts, different classes throughout a month, and it could be different the next month, so

it's kind of hard to answer that." USA's Ex. 1, 42:25 – 43:8. Gray continued in her testimony when asked how many times prior to 2014 had she specifically done instruction aboard warping tugs, "I don't recall … I couldn't give you a perfect answer…I can't give a correct answer [sic] exact amounts." USA's Ex. 1, 48:22 – 49:10. Stated plainly, USA cannot prove the percentage of time Gray spent aboard warping tugs compared to her shoreside duties. As such, USA cannot meet its burden of proof on the issue of seaman status.

19. PAE disputes the allegations in USA's Paragraph No. 19 that "Gray taught the OP Basic Course and Craftmaster Course on board warping tugs in San Diego," and none of the testimony cited by USA supports this allegation. Rather, the testimony cited by USA simply supports the proposition that Gray taught various unidentified courses in both San Diego and Norfolk during the five years before her injury, and in March of 2014 she was assigned to teach the Craftmaster course in Norfolk. Critically, USA provides no evidence showing the percentage of time Gray spent working aboard vessels underway during the five years before her injury.

20. PAE does not dispute the allegations in USA's Paragraph No. 20.

21. PAE disputes the allegations in USA's Paragraph No. 21 that a five-week Craftmaster Course was taught by PAE four, or maybe five times, per year. The evidence cited by USA does not support the allegation. USA's citation to Gray's testimony simply provides that, "Every course was different…. [D]ifferent classes throughout a month, and it could be different the next month…." Similarly, USA's citation to Mr. Torres' testimony adds more confusion, as it simply provides that classes were taught in Virginia "maybe twice a year" and that "it depends on the course. Might be two weeks. Might be five weeks." Most importantly, USA fails to cite any evidence that Gray was even present and working aboard Navy vessels during the alleged four, or maybe five, times a year that PAE taught a course. Indeed, the evidence shows that Gray did

not teach every course, and she often remained in the San Diego office performing her shoreside duties, while other PAE employees taught courses. Ex. 1, Deposition of Glen White, 40:7-24.

22. PAE does not dispute the allegation in USA's Paragraph No. 22 that, on the few occasions when she "was teaching the Craftmaster and OP Basic Course, Gray would spend the first week in the classroom and the next four weeks *mostly* on warping tugs." However, this fact is irrelevant without proof that this time accounted for at least 30% of Gray's overall duties as an Engineering Technician IV. Critically, USA offers no evidence that quantifies the amount of time Gray spent underway aboard warping tugs, as compared to the total of her employment with PAE, including shoreside duties as classroom instructor, technical librarian, fire marshal, telephone receptionist, etc. By prefacing its allegations with "when teaching" or "while teaching," without first establishing the overall percentage of time that Gray actually taught, USA fails to prove any relevant fact upon which this Court may determine that Gray spent the requisite amount of time during her overall employment with PAE working aboard a vessel in navigation.

23. PAE does not dispute the allegations in USA's Paragraph No. 23 that PAE instructors, including Gray, sometimes performed maintenance on various vessels. However, USA fails to offer any evidence that quantifies the percentage of time Gray performed maintenance while underway (similar to that of a seaman), as compared to maintenance she performed while the vessel was secured to the pier or out of the water (similar to that of a shipyard worker).

24. PAE does not dispute that Warping Tug 08 was part of the Navy's fleet.

25. PAE does not dispute the allegations in USA's Paragraph No. 25.

26. PAE does not dispute the allegations in USA's Paragraph No. 26.

27. PAE does not dispute the allegations in USA's Paragraph No. 27.

28. PAE does not dispute the allegations in USA's Paragraph 28 that when the warping tug is being functionally operated as intended in naval amphibious operations, it carries a crew of six Navy personnel, and when being used as a training platform to teach students, it carries a crew of two Navy personnel. PAE disputes that the warping tug was "crewed" by PAE instructors, and USA fails to cite any evidence in support of the allegation that PAE instructors are members of the crew of the warping tug. Ex. 3, Deposition of Chief Douglas, 17:7-15; Ex. 4, Deposition of Teri Gray, 65:24-25, 66:1.

29. PAE does not dispute the allegation in USA's Paragraph 29 that PAE instructors generally work in pairs with one teaching a student in the pilothouse and another providing instruction to students on deck. PAE disputes that Gray worked as a pair on the date of her injury, or that she acted as a lookout on the date of her injury. None of the evidence cited by USA proves that Gray was acting as lookout on the date in question or was navigating the vessel at the time of her injury. Indeed, the evidence shows there were four PAE instructors on board the Warping Tug on March 18, 2014, resulting in "a lot of downtime," and during the two hours before her injury, Gray was below deck quizzing students on their technical manuals. USA's Ex 1, 77:17—78:6.

30. PAE does not dispute the allegations in USA's Paragraph No. 30.

31. PAE disputes the allegations in USA's Paragraph No. 31 that Gray "spent the vast majority of [her] time underway on the warping tugs," and that "from March 3-14 [she] spent approximately 87.25 hours instructing [and], of this time, 53.5 hours were underway on the warping tugs." The evidence cited by USA in support of this allegation proves no such thing. As a preliminary matter, USA's Exhibits 14 and 15 are inadmissible under the Federal Rules of Evidence, as they lack a proper foundation as to their nature and relevance. Although Gray's

name appears in Exhibit 14 on March 5th, 7th, and 13th, for a total of 10 hours, it is unclear what she was doing during the ten hours her name appears on the document. At best, the document establishes that Gray worked 10 hours in Norfolk from March 3-14, 2014, in the context of nearly three decades of employment with PAE. Regarding USA's Exhibit 15, it appears to show the number of hours worked by other PAE employees during the twelve days from March 17-28, 2014. The exhibit is not relevant to the inquiry of Gray's seaman status, because Gray did not work after her injury on March 18, 2014.

32. PAE disputes the allegations in USA's Paragraph No. 32 that "the vessels were to be used by PAE instructors to teach … maintenance," and the evidence cited by USA does not support the allegation.

33. PAE does not dispute the allegations in USA's Paragraph No. 33.

34. PAE disputes the allegation in USA's Paragraph No. 34 that the mission of the warping tug "was to teach sailors how to maneuver the tug using various controls." The mission of the Warping Tug has remained the same since it joined the fleet—to rapidly transport cargo from ship to shore during naval amphibious operations. Ex. 2, Deposition of Captain Kinsey, 112:12-25, 113:1-13. It is not that the warping tug's mission changed on the day of Gray's injury; it is that Gray duties simply did not contribute to the mission of the warping tug. Gray was aboard the warping tug solely for purposes of using it as a training platform to teach students. On the day of Gray's injury, the warping tug was crewed by two Navy personnel, instead of the usual six. Ex. 2, Deposition of Captain Kinsey, 114:15-25, 115:1-19.

35. PAE disputes the allegations in USA's Paragraph No. 35, and the evidence relied upon by USA does not support the allegations. More importantly, the duties assigned to other PAE employees on March 18, 2014, are irrelevant to the issue of Gray's seaman status. None of the

evidence cited by USA proves that Gray "stood watch, performed maintenance, moved equipment, and directed the navigation of the warping tug while in its pilothouse." Indeed, she was doing none of these things when she was injured, and the only evidence offered by USA regarding Gray's actions on March 18, 2014, is that in the two hours before her injury, she was below deck quizzing the students on their technical manuals. At the time of her injury, she had just finished eating lunch and was going up stairs to walk around on deck and check on the students to make sure that everyone was accounted for. USA's Ex. 1, 77:17—78:6, 135:9—135:21.

36. PAE disputes the allegations in USA's Paragraph No. 36. As mentioned in the previous paragraph, USA offers no evidence proving Gray performed any of the alleged actions at the time of her injury. Although USA proffers evidence that Gray, on a few previous occasions during her decades of employment with PAE, performed some of these tasks, USA offers no evidence that Gray was performing these tasks on the day of her injury.

37. PAE disputes the allegations in USA's Paragraph No. 37 that Gray had command of the warping tug on March 18, 2016, and the evidence relied upon by USA does not support the allegation. The evidence offered by USA simply suggests that Gray was in the pilothouse earlier in the day before she was injured. USA offers no evidence regarding the length of time Gray spent in the pilothouse, what she was doing in the pilothouse, or the nature of any instruction she may have given to the Navy student who was operating the warping tug.

38. PAE disputes the allegations in USA's Paragraph No. 38 that Gray was climbing the ladder to stand a navigational watch on deck, and the evidence relied upon by USA does not support the allegations. Rather, the evidence cited by USA simply shows that Gray was climbing up the ladder to go "topside … to make sure that there was an instructor up there."

39. PAE does not dispute the allegations in USA's Paragraph No. 39.

40. PAE does not dispute the allegations in USA's Paragraph No. 40.

41. PAE does not dispute the allegations in USA's Paragraph No. 41.

42. PAE does not dispute the allegations in USA's Paragraph No. 42.

43. PAE does not dispute that allegations in USA's Paragraph No. 43.

44. PAE disputes the allegations in USA's Paragraph No. 44 that "Smith was directing [the Navy student] Shinkevich to perform a 'touch and go' with the dolphin pier" when Gray was injured, and the evidence cited by USA does not support the allegation. USA's Exhibit 18 actually contradicts the allegation, as it states that Smith was training Sinkevich in "auto joystick mode on INLS Warping Tug 08. The current task assigned to the student was to walk the craft around the South Dolphin in the above mention training mode at which time the craft surge and hit the Dolphin."

## ARGUMENT

USA lacks facts necessary for summary judgment in its favor. USA's motion imposes upon it the burden to prove that there exists no genuine issue of material fact as to seaman status. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Despite its burden, USA's "facts" do not support its claim that Gray is a seaman. Summary judgment should be denied to USA as a matter of law because the evidence in the case shows that the only reasonable finding is that Gray is not a Jones Act seaman.

**I. The record lacks evidence to satisfy *Chandris'* two-pronged seaman status test.**

USA's gaps in evidence preclude judgment in its favor. On summary judgment as to seaman status, USA must have enough evidence to meet the two prongs of the *Chandris* test: (1) whether the worker's duties contributed to the function of the vessel and (2) whether the worker

had a connection to the vessel that is substantial in both duration and nature. *Chandris, Inc. v. Latsis*, 515 U.S. 347, 347, 115 S. Ct. 2172, 2179, 132 L. Ed. 2d 314 (1995). USA lacks evidence essential to satisfy both of these prongs.

As an initial matter, Gray was not a member of the crew and her duties as an instructor did not contribute to the function of the vessel. Chief Douglas made clear that Gray was not a member of the crew and Gray herself opined that she was not a crewmember. Ex. 3, Deposition of Chief Douglas, 17:7-14; Ex. 4, Deposition of Teri Gray, 65:24-25-66:1-6. The positions of Chief Douglas and Gray are instructive and valid because the mission of Warping Tug 08 is not to train sailors, but rather to accomplish its designated amphibious operations as part of the U.S. Navy. Cross Mot. Summ. J. 9, ¶ 24 (Warping Tug 08 is used to "maneuver interchangeable INLS modules into position to create the Roll-on/Roll-off Discharge Facility."); Cross Mot. Summ. J. 10, ¶ 27 ("The INLS is a floating pier for transfer cargo from large ships to shore in areas where conventional port facilities are unavailable or inadequate."). Gray's job assignments were not related to Warping Tug 08's mission in this regard. Indeed, the Warping Tug 08 was not acting as it was functionally designed and intended at the time of the accident.

USA did not provide any evidence to suggest that Gray was somehow assisting in the Warping Tug's amphibious operations. USA does, however, attempt to couch Gray's alleged "maintenance" duties as important to the vessel's mission to satisfy the *Chandris* function test. Cross Mot. Summ. J. 6, ¶ 2; *Id.* at 7, ¶ 7; *Id.* at 8 ¶¶ 12, 17. Again, there is no evidence that the contract required PAE employees to teach Navy students how to maintain the vessels. Importantly, even if such evidence existed it would not be dispositive as "*Chandris* teaches us, however, that the specific activity being performed at the time of the injury is not sufficient to establish the employee's status under the Jones Act. Rather, ***we must determine whether an***

*employee has seaman status by looking at his work history*." *Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548, 563, 117 S. Ct. 1535, 1544, 137 L. Ed. 2d 800 (1997) (emphasis added). The narrow snapshot of Gray's work history presented by USA is insufficient to establish that Gray is a seaman, which becomes even more apparent when considering the second prong of *Chandris*. Based on the evidence before the Court, there can be no finding that Gray's duties were in furtherance of the vessel's mission. USA has not satisfied the first prong of *Chandris*.

Assuming, *arguendo*, that USA's evidence proves the first prong of *Chandris,* USA has failed to produce evidence sufficient to satisfy the second prong. Specifically, USA has not produced evidence establishing Gray's requisite connection to a vessel in navigation that was substantial in terms of both its duration and nature. None of the facts listed in USA's Statement of Undisputed Facts satisfy the test enunciated in *Chandris*. The only allegation that even addresses this issue is Paragraph 18, which reads: "Gray spent most of her time as an instructor on the warping tugs." Cross Mot. Summ. J. 9, ¶ 18. Such an allegation is not supported by the evidence, as USA has failed to distinguish the amount of time Gray spent on warping tugs underway versus warping tugs secured to the pier, an important factor in calculating Gray's connection to a vessel in navigation. *See Papai*, 520 U.S. at 559-60.

More importantly, USA is unable to quantify Gray's amount of time underway aboard Navy vessels, as compared to Gray's overall duties during a work history with PAE spanning a quarter-century. USA cannot, however, show through any of the evidence in the record a "substantial duration [or connection to a vessel or fleet of vessels] by demonstrating that 30 percent or more of [Gray's] time [was] spent in service of [the Warping Tug 08 or other U.S. Navy vessels]." *Becker v. Tidewater, Inc.*, 335 F.3d 376, 388-89 (5th Cir. 2003). USA does not contend that Gray spent a significant amount of her work aboard the Warping Tug 08 with any

"degree of regularity and continuity," and instead makes a veiled attempt at seeking application of the fleet doctrine. *Chandris*, 515 U.S. at 369, 115 S.Ct. at 2190. The fleet doctrine does not apply here because there is no evidence as to which other U.S. Navy vessels Gray has served on during her career.

USA alleges, again without support, that "Gray, and her colleagues, spent the vast majority of their time underway on the warping tugs." Cross Mot. Summ. J. 11, ¶ 31. Although Gray testified that she worked on other vessels, there is no evidence in the record to establish which vessels, when she was on such vessels, and for how long she was attached to such vessels. Such evidence is necessary to establish a sufficient connection to vessels in navigation under the fleet doctrine. *See Ardleigh v. Schlumberger Ltd.*, 832 F.2d 933 (5th Cir. 1987)(summary judgment denying seaman status although plaintiff spent more than 70% of his time on vessels); *Cunningham v. Schlumberger Well Services*, 937 F. Supp. 570 (W.D. La. 1996) (finding no seaman status despite 75% of work time on vessels); *Langston v. Schlumberger Offshore Services, Inc.*, 809 F.2d 1192, 1193-94 (5th Cir. 1992)(no seaman status because 18 jobs on 15 different vessels owned by 10 different owners did not qualify as an identifiable fleet); *Barrett v. Chevron, U.S.A.*, 781 F.2d 1067, 1074 (1986) (rejecting "notion that fleet of vessels ... means any group of vessel an employee happens to work aboard").

Courts do not make an exception to the core requirement that there by attachment of an injured worker to a vessel or identifiable fleet of vessels. *Chandris*, 515 U.S. at 371, 115 S.Ct. at 2191. As the scope of Gray's connection to other U.S. Navy vessels has not been established, this Court should therefore "take the [seaman status] question from the jury by granting summary judgment" in favor of PAE. *See id.*

## II. No reasonable factfinder could find for USA.

Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Here, the only issue that would affect the outcome of the case is Gray's seaman status. As the record lacks evidence to establish Gray's seaman status, the only reasonable conclusion by the factfinder is that Gray was not a seaman. Summary judgment on seaman status is appropriate if the facts establish the lack of seaman status as a matter of law and no reasonable evidentiary basis exists to support a jury finding that the injured person is a seaman. *Ellender v. Kiva Constr. & Eng'g, Inc.*, 909 F.2d 803, 805 (5th Cir. 1990). Summary judgment should, therefore, be granted in favor of PAE as this issue is the only material issue in dispute between the parties.

## CONCLUSION

For the reasons set forth herein, PAE respectfully requests that this Honorable Court deny Third-Party Plaintiff's Cross-Motion for Partial Summary Judgment, grant PAE's Motion for Summary Judgment, and for any further relief the Court deems proper and just.

                                            PACIFIC ARCHITECTS AND ENGINEERS,
                                            LLC, a Delaware LLC

                                            /s/ Edward J. Powers
                                                      Of Counsel

Edward J. Powers, Esq. (VSB No. 32146)
Jennifer L. Eaton, Esq. (VSB No. 87491)
Vandeventer Black LLP
101 West Main Street, Suite 500
Norfolk, VA  23510
Telephone:  (757) 446-8600
Facsimile:  (757) 446-8670
epowers@vanblacklaw.com
jeaton@vanblacklaw.com
*Counsel for Third-Party Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 21, 2018, I will electronically file the foregoing with the Clerk of Court using the CM ECF system which will send a notification of electronic filing (NEF) to all counsel of record, to include:

Deborah C. Waters, Esq.
Waters Law Firm, P.C.
Town Point Center, Suite 600
150 Boush Street
Norfolk, Virginia 23510
Telephone: (757) 446-1434
Facsimile: (757) 446-1438
dwaters@waterslawva.com

Dana J. Boente, Esq.
Virginia Van Valkenburg, Esq.
Assistant U.S. Attorneys
Office of the United States Attorney
101 West Main Street, Suite 8000
Norfolk, VA 23510
Telephone: (757) 441-6331
Facsimile: (757) 441-6889
Virginia.VanValkenburg@usdoj.gov

Eric A. Dupree, Esq.
Dupree Law
1715 Strand Way, Suite 303
Coronado, CA 92118
Telephone: (619) 522-8700
Facsimile: (619) 522-8787
edupree@dupreelaw.com
*Counsel for Plaintiff*

Nicolaus C. Gruesen, Esq.
Robert Kelly, Esq.
United States Department of Justice – CIV/T-AA
P.O. Box 14271
Washington, DC 20044-4271
Telephone: (202) 616-4100

Edward J. Powers, Esq. (VSB No. 32146)
Jennifer L. Eaton, Esq. (VSB No. 87491)
Vandeventer Black LLP
101 West Main Street, Suite 500
Norfolk, VA 23510
Telephone: (757) 446-8600
Facsimile: (757) 446-8670
epowers@vanblacklaw.com
jeaton@vanblacklaw.com
*Counsel for Third-Party Defendant*

    /s/ Edward J. Powers